IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Donna G. White,<br><br>                    Plaintiff,<br><br>v.<br><br>Bio-Medical Applications of South Carolina, Inc., *doing business as Fresenius Medical Care Sumter*,<br><br>                    Defendant. | C/A No. 3:22-cv-1657-SAL<br><br><br><br>**ORDER** |

Plaintiff Donna G. White ("Plaintiff") brings this action against her former employer, Defendant Bio-Medical Applications of South Carolina, Inc., doing business as Fresenius Medical Care Sumter ("Defendant"). Plaintiff originally filed this action in state court, alleging claims for disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12102, *et seq.*, as amended by the ADA Amendments Act of 2008, effective January 1, 2009, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), as well as a state law claim for promissory estoppel. *See* ECF No. 1. Defendant removed the action to federal court. *Id.* Following discovery, Defendant moved for summary judgment, which Plaintiff opposes. [ECF Nos. 17, 18, 20.]

This matter is before the court on the Report and Recommendation ("Report") issued by United States Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), recommending Defendant's motion be granted. [ECF No. 23.] Plaintiff objects to the recommendation. [ECF No. 25.] Defendant responded. [ECF No. 26.] For the reasons that follow, the court adopts the Report in part, modifies it in part, and adopts the ultimate recommendation. The court grants Defendant's motion for summary judgment, ECF No. 17.

1

**LEGAL STANDARDS**

**I.     Review of a Magistrate Judge's Report**

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Matthews v. Weber*, 423 U.S. 261 (1976). A district court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). A district court, however, need only conduct a de novo review of the specific portions of the magistrate judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). Without specific objections to portions of the Report, this court need not provide an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 n.6 (D.S.C. 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). "Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for clear error." *Dunlap*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017) (citing *Diamond v. Colonial Life &*

*Accident Ins. Col*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby*, 718 F.2d at 200; *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)).

## II.     Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## DISCUSSION

On June 22, 2023, the magistrate judge issued a thorough Report and Recommendation. The Report sets forth in detail the relevant facts and standards of law on this matter, and the court incorporates those facts and standards without a full recitation.[1] *See* ECF No. 23. In the Report,

---

[1] Although Plaintiff objects to the inferences drawn from the facts, she does not object to the factual background or legal standards set forth in the Report. *See* ECF No. 25.

the magistrate judge concluded that Plaintiff failed to set forth a prima facie claim for disability discrimination under the ADA because she did not show that the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *Id.* at 12–16. And, even if she did set forth a prima facie case, she failed to demonstrate evidence of pretext. *Id.* at 16–20. The magistrate judge rejected Plaintiff's ADA retaliation claim for the same reasons. *Id.* at 20–21. As to Plaintiff's promissory estoppel claim, the magistrate judge found Plaintiff failed to identify a promise that was made to her in unambiguous terms, nor did she offer evidence to dispute Defendant's evidence that efforts were made to locate another position for Plaintiff. *Id.* at 21–22.

Plaintiff's specific objections are as follows:

1) The Magistrate Judge drew all reasonable inferences in favor of the moving party, Defendant, instead of Plaintiff, as required under FRCP Rule 56(a).

   Further, the Magistrate Judge erred by granting Defendant's motion for summary judgment in light of a myriad of material facts that are in dispute.

2) The Magistrate Judge erred by focusing solely on Plaintiff's first request for medical leave in analyzing the temporal proximity between Plaintiff's protected activities and her termination.

3) The Magistrate Judge erred by placing the burden of production on Plaintiff to produce documents to dispute that Plaintiff's job was eliminated.

4) Plaintiff has put forth sufficient evidence showing that Defendant made an unambiguous promise as to Plaintiff's continued employment with Defendant.

[ECF No. 25 at 1.] The court addresses these objections below.

## I.     ADA Retaliation Claim

### A.     Factual Summary

The court has already adopted the detailed factual summary by the magistrate judge, but a brief overview of the facts, taken in the light most favorable to Plaintiff, is helpful here. The court also notes where facts are disputed.

In 2015, Plaintiff began working as a Certified Clinical Hemodialysis Technician at Defendant's Sumter facility. In 2019, she transferred to Defendant's Swan Lake facility. There, she worked Monday, Wednesday, Friday, and every other Saturday from 2:00 p.m. until approximately 10:00 p.m. (the "third shift"). In May 2020, Plaintiff went on medical leave for shoulder surgery. She was originally scheduled to return to work in October 2020, but she required an additional surgery. While waiting for her second surgery, Plaintiff asked to return to work on light duty with her doctor's approval, but she was informed that light duty was not available for her position. On September 29, 2020, Defendant approved Plaintiff's request for an accommodation to remain out of work from July 4, 2020, through November 12, 2020.

Prior to her second surgery, Plaintiff spoke with Susan Lea, the clinical manager at Swan Lake and Plaintiff's direct supervisor, about her need for that surgery. According to Plaintiff, Lea told Plaintiff her position would "be all right[,]" that Lea would "hold" Plaintiff's position for her, and that, if Lea could not hold the position, then Lea would call Plaintiff. [ECF No. 18-1 at 15.] Plaintiff did not return in November 2020 and stayed out of work while she recovered from her second surgery.

The exact timeline of events for January through April 2021 is not clear from the record. In her deposition testimony, Plaintiff had difficulty pinpointing the dates of the various conversations she had with employees of Defendant, so the court cannot be more specific in its recitation. Sometime in approximately February 2021, Plaintiff called Lea to tell her she would be cleared to return to work in March 2021. Plaintiff testified that when she asked Lea if she could return to her position, Lea "said yes because . . . they had openings everywhere." [ECF No. 18-1 at 17.]

Then later in February 2021, Plaintiff called to say she could return to work on March 16, 2021. At that time, Lea told Plaintiff her position was no longer available,[2] and Swan Lake was fully staffed, but Lea told Plaintiff they would try "to find [Plaintiff] somewhere to go and [Lea] would get back with [Plaintiff] once she had [done] that." [ECF No. 18-1 at 19.]

Plaintiff testified that, when Lea did not return her calls, she reached out to Samontra Carter, Defendant's Director of Operations, who was responsible for overseeing eight clinics, including Swan Lake. Plaintiff also got in contact with Latoya Robinson, who was part of Defendant's Human Resources department. Robinson told Plaintiff that Lea and Carter would get back in touch with her about other locations or positions with Defendant. On February 18, 2021, Plaintiff submitted a request for accommodation through a program used by Defendant's Human Resources department requesting leave for the period January 14, 2021 through March 15, 2021. *See* ECF Nos. 18-6, 18-8. On February 25, 2021, Robinson sent an email to Lea, copying Carter, indicating Plaintiff's estimated return to work date would be approved, and since Lea's facility was fully staffed, Carter "would be tasked in locating a . . . role if available throughout [her] managed areas." [ECF No. 18-8 at 7.] In that email, Robinson stated, "In the event nothing is available, Donna will be notified and we explore other options." *Id.* In her deposition, Robinson testified that "other options" were administrative termination and nothing else. [ECF No. 18-4 at 33.]

There is dispute about what conversations Defendant's representatives had with Plaintiff in the process of finding a new position for her. Lea testified that when Plaintiff advised her of

---

[2] In her deposition, Lea testified that the third shift was phased out beginning in January 2021 because of a decrease in the patient census. Where there had been two people in Plaintiff's role, that number went down to one in January 2021, and the position was fully eliminated by the summer of 2021.

the date her doctor had cleared her to return to work, Lea told her there was a day shift available at Swan Lake, and Plaintiff "said she could not get there before 2:00 pm because of her other job." [ECF No. 18-2 at 21.] Lea was told that Carter was looking into whether there were positions at other locations that could accommodate the hours Plaintiff needed. Carter similarly testified there were positions available at Swan Lake and other locations, and she advised Plaintiff of that, but Plaintiff "specifically want[ed] the third shift." [ECF No. 18-3 at 18.] Robinson testified that "from what [she] underst[oo]d, there were multiple conversations and multiple offers made to [Plaintiff] at different clinics. The concern was that [Plaintiff] was not receptive to the hours or the time frames of the schedule because it did not fit her personal needs." [ECF No. 18-4 at 25.]

In her deposition, Plaintiff acknowledged she was asked about her interest in other shifts, but she did not specify who asked her about other opportunities. But Plaintiff testified at another point that she was never offered another position at Swan Lake, Sumter, or any other facility. According to Plaintiff, after learning about the elimination of her position, she tried to call Lea and Carter but did not get calls back. Yet, in her testimony Plaintiff admits she did, in fact, have some phone calls with Defendant's representatives. She claims, however, those calls were unproductive, and eventually, she told them "all this going back and forth, all this saying you're going to call me back and you never call me back . . . either you terminate me or give me my job back." [ECF No. 18-1 at 21.]

Plaintiff was administratively terminated on April 7, 2021. Plaintiff testified she was never told she was terminated. Instead, she realized it after seeing a payment from Defendant in her bank account and receiving a letter about her 401k from her bank.

7

### B.     Applicable Standard

Plaintiff's ADA retaliation claim is analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) ("[T]he *McDonnell Douglas* scheme of proof does apply to appropriate claims under the ADA."). This begins with Plaintiff's burden to establish a prima facie case of retaliation, which requires her to show (1) she engaged in protected conduct; (2) she suffered an adverse action; and (3) a causal link exists between the protected conduct and the adverse action. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Under *McDonnell Douglas*, after Plaintiff makes a prima facie case, the burden shifts to Defendant to articulate some legitimate, nonretaliatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If Defendant does so, the burden shifts back to Plaintiff to show the articulated reason was a pretext for retaliation. *Id.* at 804.

### C.     Prima Facie Case

Defendant assumes that Plaintiff satisfied the first element of a prima facie case via her request for time off, and Defendant concedes her termination satisfies the second element. *See* ECF No. 20 at 7. However, Defendant disputes that Plaintiff can show a causal link between the protected activity and the adverse action. *Id.* To satisfy that third element, Plaintiff relies on the temporal proximity between the request for accommodation she made on February 18, 2021, and her administrative termination less than two months later.

According to the Fourth Circuit, "the passage of time alone cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273

8

(2001) (per curiam)). Defendant recognizes the date of Plaintiff's request for accommodation in February 2021, but notes that Plaintiff initially went on medical leave in May 2020, then made a second request in October 2020, which extended her leave beyond the initial five months. [ECF No. 20 at 5–7.] As noted by the Report, "[t]his second request was *five months* before she indicated that she was able to return to work and *six months* before she was separated from her employment with [Defendant]." *Id.* at 6. The Report agreed with Defendant and concluded "[a] period of five or six months as in this case is not 'very close,' as found repeatedly by the courts." [ECF No. 23 at 15, 20 (applying same analysis to retaliation claim).] Plaintiff objects to the Report's reliance on the October 2020 request in calculating temporal proximity for purposes of her retaliation claim. [ECF No. 25 at 12–13.]

The court generally agrees that, for purposes of the ADA retaliation claim, and viewing the facts in the light most favorable to Plaintiff, her request for accommodation on February 18, 2021, was a protected activity, and she was terminated less than two months later. *Cf. Bateman v. Project Hosp., Inc.*, 2009 WL 3232856, at *12 (E.D.N.Y. Sept. 30, 2009) (finding a letter "indicat[ing] [the employee's] desire to return upon her anticipated recuperation . . . can reasonably be read to request additional leave time—an ADA recognized accommodation . . . —during which to fully recover"). As the Fourth Circuit has noted, "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 336 (4th Cir. 2018). Based on the proximity between her February request for accommodation and her termination, the court assumes that Plaintiff has established a prima facie case of wrongful termination or discrimination. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (finding close proximity tending to show causation where termination occurred within one month of employee filing complaint); *King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (finding

9

that a two-and-a-half month gap between protected activity and an adverse employment action was sufficiently narrow to establish the causation prong of the prima facie case solely on the basis of temporal proximity); *see also Cetina v. Newbold Services*, C/A No. 6:12-2222-TMC, 2013 WL 5596921, at *7 (D.S.C. Oct. 11, 2013) (assuming a prima facie case of retaliation where "less than two months passed between [the protected activity] and Plaintiff's termination"). Consequently, the court sustains Plaintiff's objection and finds she has demonstrated a prima facie case of retaliation.

        **D.**        **Reason for Termination**

Under the *McDonnell Douglas* framework, the burden next shifts to Defendant to offer a legitimate, nonretaliatory reason for Plaintiff's termination. In its motion for summary judgment, Defendant articulates this reason: "White was terminated after she had exhausted all available leave and after she refused to accept an available position upon her release to return to work." [ECF No. 17-1 at 10.] In its reply, Defendant describes the reason for terminating Plaintiff as follows: "[T]he Company's business conditions changed at the Swan Lake facility resulting in White's shift no longer being needed after her ten months of medical leave." [ECF No. 20 at 8.] These are legitimate, nonretaliatory reasons that are supported by the record.

Lea, Carter, and Robinson were all consistent in their testimony that Plaintiff was administratively terminated. But the fact that she was administratively terminated describes the *nature* of the termination, not necessarily the *reason* for her termination. As for the reason, the undisputed evidence demonstrates that Plaintiff's position, as a third-shift hemodialysis technician, was eliminated beginning in January 2021 following a patient census. This is a legitimate, nonretaliatory reason.

However, when viewing the evidence and drawing inferences in the light most favorable to Plaintiff, as the court must on summary judgment, the elimination of the third shift was not the sole reason for Plaintiff's termination. Carter testified, "It was an administrative termination. And she did not accept any of the—or I guess follow up with any of the openings that were offered to her." [ECF No. 18-3 at 23–24.] Robinson testified as follows:

> She did not return because she failed to accept the offers that was provided to her by leadership.
>
> Q. And what offers were provided to her?
>
> A. I'm not certain of the clinics. Typically, our process is once an employee has exhausted their leave of absence, especially in a general non-protected leave case, the position can be filled and which in this case it was. And so the opportunities that was advised to Donna White, she did—she was not receptive of the employment or locations that were provided by her leadership team.

[ECF No. 18-4 at 18.] And so, viewing this evidence in the light most favorable to Plaintiff, Plaintiff was terminated both because her position was eliminated and also because she did not follow up with the other positions that were available to her within Defendant's facilities.[3] Both reasons are legitimate and nonretaliatory.

---

[3] Defendant's briefing supports the conclusion that there were multiple reasons for Plaintiff's termination. For example, sometimes Defendant argues the reason for Plaintiff's termination was the elimination of her position. *See* ECF No. 20 at 8. But even in its response to Plaintiff's objections to the Report, Defendant describes its "legitimate, non-discriminatory and non-retaliatory reason for White's termination [as] . . . she had exhausted all of her available leave and refused to accept any available positions." [ECF No. 26 at 4.]

Of course, it is the evidence the court must rely upon to glean the reason for Plaintiff's termination. As explained by the Supreme Court, "[t]he reasons the defendant sets forth are set forth 'through the introduction of admissible evidence[,]'" and they do not "exist apart from the record—in some pleading, or perhaps in some formal nontestimonial statement made on behalf of the defendant to the factfinder." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 522–23 (1993) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981)). However, the court emphasizes that even Defendant's own briefing does not confine the reason for Plaintiff's termination as solely the elimination of her position. Defendant's briefing simply reflects the evidence from which the court has determined the reasons for Plaintiff's termination.

11

**E.     Pretext**

The burden now shifts back to Plaintiff. She must establish Defendant's proffered reason for her termination is a pretext for retaliation. As detailed above, Defendant's witnesses consistently[4] offered two related reasons for Plaintiff's termination: (1) her shift was eliminated, and (2) she was not receptive to other opportunities. But Plaintiff points to evidence that she was never offered any other position with Defendant. Thus, she challenges the truth of one of the reasons for her termination.

"In order to show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)). "But to carry her burden at the pretext stage of showing 'that retaliation was a but-for cause' of her termination [a plaintiff] must present evidence 'to establish both that the employer's reason [for the termination] was false and that retaliation was the real reason for the challenged conduct.'" *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 174 (4th Cir. 2020) (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015)).

There is no factual dispute as to whether Plaintiff's shift was eliminated beginning in January 2021,[5] but the fact remains that Plaintiff was not terminated at that time. Instead, in

---

[4] Plaintiff believes she has demonstrated pretext in that Lea, Carter, and Robinson offered "varying reasons for Plaintiff's termination." [ECF No. 25 at 9.] The court disagrees. Although there appears to be more than one reason for Plaintiff's termination based on the evidence, those reasons remain consistent. The magistrate judge correctly explained that "[a]lthough the reasons offered include variances in language, these variances do not indicate contradicting, shifting, or changing reasons sufficient to establish pretext." [ECF No. 23 at 17.]

[5] The only evidence presented demonstrates Plaintiff's position was eliminated. *See* ECF No. 23 at 17–20. The court rejects Plaintiff's unsupported objection where she argues Defendant was

February 2021, Defendant approved Plaintiff's requested accommodation for additional leave through mid-March. She was not terminated until April 2021. From these facts, the court is left to conclude that both sides were open to the employment relationship enduring beyond the elimination of Plaintiff's shift in January 2021.

As to the evidence about Plaintiff's openness to other positions, Lea, Carter, and Robinson all testified to discussions with Plaintiff about openings, which were rejected by Plaintiff because they did not match her preferred schedule or location. *See* ECF Nos. 18-2 at 21 ("I did tell her we had day shift, the morning shift, and she said she could not get there before 2:00 pm because of her other job."); 18-3 at 18–20 (Carter recalling discussions with Plaintiff and "her wanting to come back and that she was needing certain times or hours . . . . We had openings at the Sumter facility during the day and then there were openings at some of the other area clinics at the time . . . . She wanted to stay at Swan Lake. . . . She wanted a third shift."); 18-4 at 25 ("From what I understand, there were multiple conversations and multiple offers made to Donna White at different clinics. The concern was that Donna was not receptive to the hours or the time frames of the schedule because it did not fit her personal needs.").

Plaintiff testified that, when she was initially planning to come back after her first surgery, she was told she may not be able to return to her third shift position. Plaintiff testified,

> [I]f my doctor did not release me, she said this is what . . . can happen. She said your job will be here but we can't promise you that there will still be an opening at your facility. . . . [I]f you've [got to] stay out longer, . . . when it's time for you to come back, if there's not a position at your facility, we still can put you somewhere within the company.

---

required to produce documentation that Plaintiff's position was eliminated. *See* ECF No. 25 at 13–14. The deposition testimony is sufficient evidence. *See* Fed. R. Civ. P. 56

[ECF No. 18-1 at 14.]  Later, Plaintiff testified about learning from Lea that Swan Lake was fully staffed, which led to this exchange:

> Q. Okay. So from that point they began asking you whether or not you were interested in other shifts at other facilities?
>
> A. No, they didn't ask me that. She didn't ask me that.
>
> Q. Okay. No one asked you if you were interested in another shift?
>
> A. Well, not no one. If you're—you be specific about who you're talking about, maybe I can give you a better answer.
>
> . . . .
>
> Q. Did anyone discuss with you the option of working a different shift?
>
> A. It was already discussed when I first got the conversation back in October during that time, but—and I believe was [Lea] did said [sic] that they was going to find me somewhere to go and she would get back with me once she had did that.

[ECF No. 18-1 at 19.]  Plaintiff later testified as follows:

> Q. And did you turn down any other positions?
>
> A. Never.
>
> Q. So you were never offered a schedule and you said no?
>
> A. Never. No.
>
> Q. You were not—were you ever offered a position over at Sumter?
>
> A. No.
>
> . . . .
>
> Q. All right. So your testimony is that you were not told that there were other positions available for you?
>
> A. I was told that there—yeah, that they didn't have any[ ]place for me to go.
>
> Q. Okay. At that facility or any facility?

14

    A.    Any facility.

[ECF No. 18-1 at 20–21.] Moreover, in her deposition, Plaintiff confirmed that she initially asked to return to her position, but she also admitted, "I understood I was out of work for a while, all I did was ask the question. It didn't matter where I went back to, what shift I was on, I just needed my job back." *Id.*

Defendant argues Plaintiff's testimony "strains the meaning of the word 'offer' to mean some form of formal offer of a position." [ECF No. 26 at 6.] The court is inclined to agree, particularly where Plaintiff was not forthcoming when questioned about who asked her about her interest in other shifts.[6] At the same time, that is not the only possible interpretation of Plaintiff's testimony. And "it is not [this court's] task to weigh the evidence and make such determinations. [Plaintiff's] burden at summary judgment 'is one of production, not persuasion; it can involve no credibility assessment.'" *Harris v. Powhatan Cnty. Sch. Bd.*, 545 F. App'x 343, 349 (4th Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Based on the above evidence, there is a question of fact as to whether Plaintiff declined other schedules or locations.

Even if the court accepts as true Plaintiff's testimony that she was asked about her interest in other shifts but was never formally nor informally offered any other schedules or locations, at best, she only casts doubt on the truth of one of Defendant's reasons for termination. She still fails to provide evidence of pretext. And Plaintiff has the burden of proving pretext. As the Supreme Court has recognized, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational

---

[6] Of note, there is no evidence that Defendant extended any formal offers to Plaintiff. *See* ECF No. 18-3 at 23 ("Q. So is it your testimony that you offered Ms. White the position at the Sumter clinic? A. I didn't offer it to her. I let her know what options were available.").

factfinder could conclude that the action was discriminatory[,]" or in this case, retaliatory. *Reeves*, 530 U.S. at 148. The court finds this case presents the scenario described in *Reeves*. That is, Plaintiff made a prima facie case of retaliation but *just barely*. She filed a request for accommodation memorializing her return-to-work date forty-eight days before her termination, and the temporal proximity of those events satisfies the low bar for a prima facie case of retaliation. Here, however, the record shows Plaintiff was on leave for ten months prior to her termination, and her February 2021 request for accommodation was not her first such request. She asked, and was given permission, to remain on leave on multiple occasions prior to then. With this record, no juror could find pretext based only on the combination of Plaintiff's weak case for temporal proximity and the weak question of fact—whether Plaintiff was offered and rejected certain schedules and locations when, by her own admission, she *was* asked if she was interested in other shifts. The court is mindful that "the McDonnell Douglas proof scheme is not to be given a wooden application that loses sight of its essential purpose as merely a 'sensible, orderly way to evaluate the evidence[.]'" *Page v. Bolger*, 645 F.2d 227, 232 (4th Cir. 1981) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Even when the facts are viewed, and the inferences are drawn, in Plaintiff's favor, the court cannot find there is a triable issue as to pretext and retaliation.

For the reasons set forth above, the court grants Defendant's motion for summary judgment as to Plaintiff's ADA retaliation claim.

## II.     ADA Discrimination Claim

To show a prima facie case of discrimination, Plaintiff must show that "(i) she was disabled, (ii) she was discharged, (iii) she was fulfilling her employer's legitimate expectations when she was discharged, and (iv) the circumstances of her discharge raise a reasonable inference

of unlawful discrimination." *See Cowgill v. First Data Tech., Inc.*, 41 F.4th 370, 379 (4th Cir. 2022). The *McDonnel Douglas* burden-shifting framework applies to this claim as well.

As noted in the Report, there is no dispute that Plaintiff had a qualifying disability, that she was discharged, or that she was fulfilling her employer's legitimate expectations. [ECF No. 23 at 13.] However, there is a dispute as to whether the circumstances of her discharge raise a reasonable inference of unlawful discrimination. Again, Plaintiff attempts to rely on the temporal proximity of her February 2021 request for accommodation to demonstrate this fourth element. But, as recently explained by the Fourth Circuit,

> Although there is some evidentiary overlap between discrimination and retaliation, discrimination and retaliation rely on different theories of motive. . . . An employer who retaliates against an employee for lodging a complaint is not necessarily motivated by discriminatory animus. . . . Accordingly, while temporal proximity between an EEOC charge and a retaliatory act may support a discrimination claim, the two theories do not always coincide. To present an inference of discrimination, the plaintiff must allege that the employer was motivated by his disability, not simply his protected action.

*Kelly v. Town of Abingdon*, 90 F.4th 158, 171 (4th Cir. 2024) (internal citations and footnotes omitted). The arguably close temporal proximity of the February 2021 request for accommodation and Plaintiff's termination does not raise a reasonable inference of unlawful *discrimination* since the evidence shows that Defendant knew of Plaintiff's disability months before that February 2021 request. *See Kelly*, 90 F.4th at 170–71 (finding "allegations sufficed to state a retaliation claim, [but] d[id] not raise an inference of discrimination" where a protected activity was "'potentially consistent' with disability discrimination" but plaintiff failed to "connect the dots" and show mistreatment was due to disabilities or others were treated differently). The court cannot infer discrimination from the temporal proximity of these events, and Plaintiff has failed to offer any other evidence that raises a reasonable inference of discrimination.

The court finds Plaintiff has failed to demonstrate a prima facie case as to her ADA discrimination claim. Accordingly, Defendant's motion for summary judgment is granted as to that claim.

### III.    Promissory Estoppel

Finally, the magistrate judge recommended granting Defendant's motion for summary judgment as to Plaintiff's promissory estoppel claim because Plaintiff "failed to present evidence of a promise made to her that was unambiguous on its terms." [ECF No. 23 at 21.] The court agrees with and adopts the Report's reasoning and recommendation as to this claim. As explained by the magistrate judge, Plaintiff's own testimony about what Lea told her precludes finding there was a promise unambiguous on its terms. *Id.* at 21–22. According to Plaintiff, Lea told her, "[Y]our position will be here. And she said if anything changes where I can't hold it, then I'll call you." [ECF No. 18-1 at 15.] Plaintiff's objection, which is based on her own interpretation of Lea's words as a "promise" to hold her position, does not render the words themselves an unambiguous promise under the law. Additionally, Plaintiff's own testimony demonstrates that, before she knew she would need a second surgery, she was told that her position might not be available upon her return. *See* ECF No. 18-1 at 14.

Regarding the purported promises that Lea would call Plaintiff if she could not hold the position and that Defendant would try to locate another position for Plaintiff, each of those statements is similarly problematic as to whether an unambiguous promise was made. *See Barnes v. Johnson*, 742 S.E.2d 6, 11 (S.C. Ct. App. 2013) ("[T]he promise to be enforced must be unambiguous with clearly articulated, definite terms, while the sustained injury must result from an inconsistent disposition by the promisor."). The court also agrees with the magistrate judge

that Plaintiff has failed to offer evidence to contradict Defendant's evidence that efforts were made to locate another position for Plaintiff. *See* ECF No. 23 at 22.

For these reasons, the court overrules Plaintiff's fourth objection to the Report and grants Defendant's motion for summary judgment as to promissory estoppel.

## CONCLUSION

As outlined above, the court adopts much, including the ultimate recommendation, of the Report, but the court also modifies the Report as set forth above.

The court **GRANTS** Defendant's motion for summary judgment, ECF No. 17.

**IT IS SO ORDERED.**

March 4, 2024                                      Sherri A. Lydon
Columbia, South Carolina                  United States District Judge